# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| CAROL KNAAK, WANDA FIRCHAU, and KAY OLIVER, *all individually and on behalf of others similarly situated*, | Civil No. 13-829 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ARMOUR-ECKRICH MEATS LLC, | |
| Defendant. | |

James H. Kaster and David E. Schlesinger, **NICHOLS KASTER, PLLP**, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402; Steven R. Sunde, **SUNDE, OLSON, KIRCHER & ZENDER, PLC**, Post Office Box 506, St. James, MN 56081 for plaintiffs.

L. Dale Owens and Eric R. Magnus, **JACKSON LEWIS LLP**, 1155 Peachtree Street N.E., Suite 1000, Atlanta, GA 30309; D. Christopher Lauderdale, **JACKSON LEWIS LLP**, 55 Beattie Place, Suite 800, Greenville, SC 29601; and David J. Duddleston, **JACKSON LEWIS PC**, 225 South Sixth Street, Suite 3850, Minneapolis, MN 55402, for defendant.

Plaintiffs, on behalf of themselves and all others similarly situated, bring this putative collective and class action against their employer, Armour-Eckrich Meats, LLC, ("Armour"), claiming that Armour failed to pay employees for time employees worked in violation of the Fair Labor Standards Act ("FLSA"), the Minnesota Fair Labor Standards Act, and in breach of a contract between the parties. Two motions are before the Court. First, Armour moves to dismiss plaintiffs' breach of contract claim and objects to United

States Magistrate Judge Arthur Boylan's recommendation to deny the motion.  Second, plaintiffs move for conditional certification of a collective action under the FLSA.  The Court will deny Armour's motion to dismiss and grant plaintiffs' motion for conditional class certification.

## BACKGROUND

Armour specializes in processing and preparing meat proteins and operates a food processing facility in St. James, Minnesota.  (Amended Compl. ("Compl.") ¶ 3, May 10, 2013, Docket No. 13.)  Plaintiffs are or have been hourly employees at Armour's facility in St. James within the last three years.  (Compl. ¶ 5.)  Plaintiffs allege that they performed unpaid work before and after clocking in and out for shifts and meal breaks, including donning and doffing protective gear and waiting in line to clock in, for a total of approximately fifteen minutes of unpaid work time per day per person.  (*Id.* ¶¶ 8-9.) Plaintiffs also allege generally that they perform unpaid work at the start and end of their work shifts, for example, because Armour uses the shift start time to calculate wages even if plaintiffs clocked in before the start time, but uses the clock-in time if plaintiffs clock in after the start time.  (*Id.* ¶¶ 13, 16-17.)

With their motion for conditional certification of a collective action class, plaintiffs have submitted declarations from nine current and former Armour employees at the St. James facility.  (*See* Aff. of David E. Schlesinger, Exs. A-I, Sept. 6, 2013, Docket No. 34.)  The declarants include both employees who work on the production line and other employees, such as a blade sharpener and inspectors.  The declarations include

several substantially similar or nearly identical allegations.  All declarants allege that they were told they need to begin their scheduled shifts with all the required sanitary clothing and safety gear already on and that they need to arrive early for their scheduled shifts. (Exs. A-I, ¶ 4.)  The declarations of all current employees (and some former employees, including non-production line employees) also state that a notice recently posted at the St. James facility states that "employees are permitted to punch in no more than five minutes before shift start."  (*Id.* ¶ 5.)  All declarants also state that they are required to put on certain clothing and gear and that they are not paid for that work.  (*Id.* ¶ 6.)   All declarants state that they are required to doff required clothing and safety gear after clocking out for their lunch break and that they are required to again don the required clothing and gear before clocking back in, such that much of their 30 minute lunch break is spent donning and doffing.  (*Id.* ¶ 7.)  All employees estimate that the unpaid work they perform results in them working  more than forty hours per week.  (*Id.* ¶ 8.)

With regard to the breach of contract claim (Count IV), plaintiffs allege that Armour "entered into an employment contract, express or implied, with Plaintiffs and class members, under which Plaintiffs and class members were to be paid at a certain hourly rate for the work they performed for the benefit of Defendant Armour" and that Armour "made this promise to Plaintiffs and class members on many occasions, including, but not limited to, on or around Plaintiffs['] and class members' respective dates of hire."  (Compl. ¶¶ 55-56.)  Plaintiffs further allege that "Plaintiffs and class members accepted Defendant Armour's offer to compensate them at a certain hourly rate for all work performed each time they reported to the St. James facility and performed

their job duties," but that Armour "breached this contract when it failed to pay Plaintiffs . . . for the time they spend/spent donning and doffing the required protective gear." (*Id.* ¶¶ 57-58.)

## DISCUSSION

### I.   MOTION TO DISMISS

Armour moves to dismiss plaintiffs' breach of contract claim for failure to state a claim upon which relief can be granted. (*See* Mot. to Dismiss, May 24, 2013, Docket No. 14.) The Magistrate Judge recommended denying this motion (Report and Recommendation ("R&R"), Oct. 18, 2013, Docket No. 44) and Armour objects (Obj. to R&R, Nov. 1, 2013, Docket No. 45).

### A.   Standard of Review

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); accord D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

On a motion to dismiss brought under Rule 12(b)(6), the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This

requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Farnam St. Fin., Inc. v. Pump Media, Inc.*, Civ. No. 09–233, 2009 WL 4672668, at *3 (D. Minn. Dec. 8, 2009) (quoting *Iqbal*, 556 U.S. at 678). Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. *Twombly*, 550 U.S. at 555 (alteration and internal quotations omitted)).

## B.  Breach of Contract Claim

Under Minnesota law, plaintiffs must demonstrate four elements to show a breach of contract: (1) a contract was formed, (2) plaintiffs performed any required conditions precedent, (3) defendant materially breached the contract, and (4) plaintiffs suffered damages as a result.[1] *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011) (citing *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 961 (D. Minn. 2000)).

---

[1] The Court recognizes that it is not settled under Minnesota law whether a plaintiff needs to plead damages in order to state a claim for a breach of contract, *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 n.5 (Minn. 2011), but because plaintiffs plainly pled damages here the Court need not address this open question.

Armour argues in its motion to dismiss that plaintiffs fail to allege sufficient facts about the alleged contract, specifically as to what a representative of Armour actually offered to plaintiffs and what tasks Armour promised to pay for, and that without those specific details, plaintiffs' allegations are conclusory and insufficient.  The Magistrate Judge rejected Armour's arguments, finding that, although "[p]laintiffs' allegations may not be 'as specific as they could be,'" they adequately alleged the formation of a contract. (R&R at 5 (quoting *Chambers v. Travelers Cos., Inc.*, Civ. No. 08-5947, 2009 WL 873124 at *5 (D. Minn. Mar. 30, 2009)).)  The Magistrate Judge concluded that plaintiffs' allegations that Armour promised to pay them a certain hourly rate for all hours worked and made the promise on many occasions were sufficient allegations of an offer, rejecting Armour's arguments that they failed because they did not include the specific identity of the promisor or the exact date of promise.  Because the plaintiffs also adequately alleged their acceptance of the offer, the Magistrate Judge concluded that plaintiffs adequately alleged the formation of a contract.[2]

Armour now objects to the conclusions of the R&R, again raising its argument that plaintiffs fail to adequately allege that Armour promised to pay them for time spent donning and doffing, rather than promising to pay them simply for time worked.  Armour argues that in order to state a claim for breach of contract, "the plaintiff must specifically allege facts showing that the defendant actually promised that it would provide [the

---

[2] With regard to the remaining three elements of a contract claim, the Magistrate Judge noted that Armour did not challenge those elements and concluded that plaintiffs adequately stated them.  (R&R at 7.)

specific] money or benefit" that plaintiffs claim to have been deprived of.  (Obj. to R&R at 6 (emphasis omitted).)  Essentially, Armour's argument appears to be that in order to state a claim for breach of contract for failure to pay for time spent donning and doffing, plaintiffs must allege that Armour promised to pay plaintiffs for time spent donning and doffing specifically, rather than simply for time worked.

The level of specificity required in allegations of breach of contract will typically depend on how plausible it is that the parties to the contract understood a specific type of activity to be encompassed by a certain contract term.  For example, the parties here do not presently dispute that working on the production line constituted "work" for which Armour promised to pay plaintiffs, nor that plaintiffs' time spent driving from their homes to the St. James facility did not constitute "work" for which Armour promised to pay plaintiffs.  But where plaintiffs allege that an activity **was** intended to constitute work under the employment agreement between plaintiffs and Armour, whether that allegation is sufficient for success on a breach of contract claim is a matter of contract interpretation, rather than a failure to state a claim.  If, under the alleged contract term that plaintiffs were to be "paid at a certain hourly rate for the work performed for the benefit of Defendant Armour," it is plausible that the parties considered time spent donning and doffing to be "work performed for the benefit of Defendant Armour," then plaintiffs' breach of contract allegations are sufficient as a matter of law.  (*See* Compl. ¶ 55.)

The Court concludes that it is plausible that the parties considered time spent donning and doffing to be compensable work under the terms of Armour's promise to

pay plaintiffs for time worked. It is reasonable, and certainly plausible, for employees to expect that time spent putting on specialized safety equipment, which is required by the employer, while on the premises of their employer, will be compensated.[3] Thus, for the purposes of notice pleading under Federal Rule of Civil Procedure 8, plaintiffs have adequately pled that there was a contract, under which they were promised to be paid for time worked (which plausibly includes donning and doffing), which Armour breached by failing to pay them for time worked.

The fact that plaintiffs' allegations do not include an allegation that Armour promised to pay plaintiffs specifically for time spent donning and doffing does not render the breach of contract pleadings inadequate. Armour cites several cases that it believes indicate that a claim for breach of contract must plead specifically that a contract included terms providing for the specific benefit that plaintiffs claim to have been deprived of. But the cases Armour cites to do not squarely support this proposition. Rather, many of them involve complaints that were woefully deficient or that inadequately alleged that there was a contract **at all**.[4]

---

[3] Several courts have held that whether or not an employment contract for work performed includes donning and doffing time is a factual question which precludes any judgment as a matter of law. *See Abadeer v. Tyson Foods, Inc.*, Civ. No. 09-00125, 2013 WL 5498190, at *20 (M.D. Tenn. Oct. 3, 2013) (denying employer's motion for summary judgment on contract claim, where "[t]he problem, by Tyson's lights, is that the parties understand the term 'all hours worked' differently, which precludes a meeting of the minds as to this essential element of the contract"); *Gatewood v. Koch Foods of Miss., LLC*, 569 F. Supp. 2d 687, 702 (S.D. Miss. 2008) (in a donning and doffing case, there was a "genuine issue of fact that donning and doffing of sanitary equipment constitutes 'work' under the FLSA").

[4] Armour cites *T.B. Allen & Associates, Inc. v. Euro-Pro Operating LLC*, Civ. No. 11-3479, 2013 WL 64605 (D. Minn. Jan. 4, 2013), but that case generally supports the plaintiffs'

(Footnote continued on next page.)

Rather, courts in this district have consistently deemed pleadings comparable to those here to state breach of contract claims. In *McCauley v. Ocwen Federal Bank, FSB*, Civ. No. 09-3183, 2010 WL 760438 (D. Minn. Feb. 26, 2010), the court held that a claim

_____

(Footnote continued.)

position. There, the plaintiff alleged that it rejected a proposed change to its contract – an $800,000 cap on commission payments and a new and reduced structure that would further reduce commission payments. *Id.* at *3. The Court found that, even though "T.B. Allen could have been more specific in its complaint about the methods of its rejections and the subsequent breaches of Euro–Pro . . . pleadings can survive a motion to dismiss even when allegations are not as specific as they could be." *Id.* (internal quotations omitted).

Armour also relies on cases where the pleadings were demonstrably less adequate than those here. In *Johnson v. Homeownership Preservation Foundation*, Civ. No. 09-600, 2009 WL 6067018 (D. Minn. Dec. 18, 2009) *report and recommendation adopted*, 2010 WL 1050333 (D. Minn. Mar. 18, 2010), the plaintiff alleged that "a contract was established on July 8, 2008, and that in July 2008, HPF informed her that it could assist her in avoiding foreclosure and finding the resources for refinancing or modifying her loan." *Id.* at *7. The Court concluded that, because these allegations did "not set forth the terms of any offer made by HPF to Johnson, much less who made the offer or when and how it was communicated to her," it was "impossible for this Court to determine whether a contract was created, the contents of the contract or whether HPF breached any of the terms of the contract." *Id.* (citing *Motley v. Homecomings Fin., LLC*, 557 F. Supp .2d 1005, 1012-13 (D. Minn. 2008)). But those allegations were sparser than those here – the plaintiff in *Johnson* alleged merely that a contract was established, but nothing about the terms of the contract – leading the court to conclude that they merely set out "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* at *8 (quoting *Iqbal*, 556 U.S. at 677). Similarly the allegations in *Motley*, 557 F. Supp. 2d 1005, are less specific than those here. *See id.* at 1013 ("Plaintiffs have not attached the allegedly violated contracts to the Complaint, nor have they pleaded the terms of those contracts, rendering it impossible to discern precisely how Homecomings allegedly has breached them. . . . There are no facts pleaded in the Complaint, however, indicating that the imposition of such fees somehow violated Brooks's mortgage-loan documents. He simply asserts that such fees were 'unnecessary'" and were imposed without notice or explanation, but he fails to cite any contract term that Homecomings purportedly breached when such fees were charged."). Here plaintiffs allege the basic elements of a contract – that Armour promised to pay them for work performed and made the promise at the outset of their employment, such that Armour has clear notice of what the breach claim is against it.

Only *DeSilva v. North Shore-Long Island Jewish Health Systems, Inc.*, Civ. No. 10-1341, 2012 WL 748760, at *8 (E.D.N.Y. Mar. 7, 2012), supports Armour's position. The Court declines to apply the reasoning used by that court, as it appears to unnecessarily heighten the pleading standards for breach of contract claims required by Rule 8.

for breach of contract was sufficiently pled, despite defendants' arguments that the pleadings were legal conclusions rather than factual assertions:

> Defendants further argue that McCauley makes a "legal assertion rather than a factual allegation" when he claims that the Forbearance Agreement required any assignee to service the loan in a manner similar to the HUD Forbearance Agreement.   But the complaint does not make a legal assertion; it states that defendants did not adhere to the terms of the agreement that transferred the mortgage from HUD to defendants.   If that agreement stated that defendants were required to comply with certain terms of the Forbearance Agreement between McCauley and HUD, such as the condition that McCauley make payments of $400 per month, then it is plausible that defendants breached that agreement by demanding that McCauley make $5000 payments. . . . McCauley's claim for breach of contract is plausible on its face, and the complaint includes sufficient factual matter that, accepted as true, states a claim to relief.

*Id.* at *5 (alterations omitted) (internal citations omitted).   Similarly here, if the agreement's term "the work they performed" was intended by the parties to include time spent donning and doffing the required safety gear, then it is plausible that Armour breached the agreement by failing to pay plaintiffs for that time.   *See also Ikechi v. Verizon Wireless*, Civ. No. 10-4554, 2011 WL 2118797, at *6 (D. Minn. Apr. 7, 2011) ("[T]hough Ikechi's prolix complaint is not artful, it contains sufficient support for Ikechi's breach of contract claim, namely, that Verizon overcharged and inaccurately billed Ikechi."), *report and recommendation adopted*, 2011 WL 2118791 (D. Minn. May 25, 2011).   Accordingly, the Court concludes that plaintiffs' allegations sufficiently state a claim for breach of contract and will deny Armour's motion to dismiss Count IV.

## II.     MOTION TO CERTIFY CONDITIONAL CLASS

Plaintiffs seek to certify a conditional class for a collective action under the FLSA, 29 U.S.C. § 216(b).   Armour does not object generally to conditional certification, but rather disputes the scope of the class and the scope of the claims.   Armour argues that the class should be limited to only production-line employees and that the claims should be limited to uncompensated time spent donning and doffing rather than for any uncompensated time worked.

### A.     Standard for Class Certification Under 29 U.S.C. § 216(b)

The FLSA permits an employee alleging wage and hour violations to assert claims on behalf of himself "and other employees similarly situated" as a collective action.   29 U.S.C. § 216(b).   To determine whether a case should be certified under the FLSA, courts in this district typically employ a two-step process.   First, the Court determines whether the class should be conditionally certified for the purposes of notification and discovery. *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quoting *Dege v. Hutchinson Tech., Inc.*, Civ. No. 06-3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007)).   At this stage, the plaintiffs need establish only that they are similarly situated, or a "'colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan.'"   *Id.* (quoting *Dege*, 2007 WL 586787, at *1).   After discovery, the court conducts the second-stage inquiry, which involves considering "'the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that

appear to be individual to each plaintiff, and other fairness and procedural considerations.'" *Id*. (quoting *Dege*, 2007 WL 586787, at *2).

The first stage is often referred to as the "notice stage" because the inquiry focuses on "whether notice of the action should be given to potential class members." *Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009) (internal quotations omitted). At this notice stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Dege*, 2007 WL 586787, at *2. Rather, "[i]n determining whether plaintiffs have met their initial burden [to warrant conditional certification of a collective action under § 216(b)], courts rely on the complaint and any affidavits that have been submitted." *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 967–68 (W.D. Wis. 2008). "Because the Court has minimal evidence, this [notice] determination is made using a fairly lenient standard," and plaintiff's burden at this stage is "not onerous." *Loomis*, 257 F.R.D. at 676 (internal quotations omitted).

### B.    Scope of the Class

Plaintiffs seek conditional certification and authorization of notice to "all employees at Defendant's St. James plant who are paid on an hourly basis and who are required to wear sanitary clothing or protective gear." (Reply at 1, Oct. 11, 2013, Docket No. 42.) Armour argues that this is too broad and that instead notice should be sent to only those employees who work or have worked on the production line, but not other

employees such as inspectors or blade sharpeners, whom it argues are not similarly situated to production-line employees.

Plaintiffs have submitted affidavits from nine current and former employees, including both production-line and non-production-line employees. The affidavits state that each employee puts on sanitary clothing and protective gear before their shift begins and takes off the clothing after punching out (including during unpaid lunch breaks). (*See* Schlesinger Aff., Exs. A-I, ¶¶ 6-7.) In the affidavits, the employees estimate that they perform between ten and twenty minutes of unpaid work per day, which results in them working over forty hours per week. (*Id.*, Exs. A-I ¶ 8.)

These affidavits suffice to show that the members of the putative class, as defined by plaintiffs, are similarly situated for the purposes of this preliminary certification stage, regardless of whether the employees work on the production line or elsewhere. Armour presents its own declarations which it argues indicates that the statements made by plaintiffs' declarants are not actually as similar as they sound. (*See* Mem. in Opp. to Mot. to Certify Conditional Class at 6-7, Sept. 27, 2013, Docket No. 37 (citing Decl. of William Meyer, Sept. 27, 2013, Docket No. 39, to dispute statements made by plaintiffs' non-production-line declarants).) To the extent Armour seeks that the Court weigh the credibility of these declarations against its own declarations to conclude that the proposed class is not, in fact, similarly situated, the Court need not consider disputes over the factual accuracy of the employees' statements or weigh the credibility of plaintiffs' submitted declarations at this stage. *Dege*, 2007 WL 586787, at *2; *see also Dominquez ex rel. v. Minn. Beef Indus., Inc.*, Civ. No. 06-1002, 2007 WL 2422837, at *2 (D. Minn.

Aug. 21, 2007) ("[t]he Court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at th[e] initial stage" of conditional class certification). Furthermore, "[n]umerous courts have . . . observed that 'disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis' rather than at the first stage." *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009) (quoting *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006)); *see also Meseck v. TAK Commc'ns, Inc.*, Civ. No. 10-965, 2011 WL 1190579, at *6 (D. Minn. Mar. 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion.").

Plaintiffs have presented evidence establishing a colorable basis that all employees who are paid hourly and required to wear protective or sanitary gear are harmed by Armour's policy of not paying such employees for all of the time they work, including time spent donning and doffing required clothing or gear. Courts have consistently certified classes in similar circumstances. *See Dege*, 2007 WL 586787, at *1-*2 (authorizing a broad class definition: "All current and former production workers employed by Hutchinson Technology from August 28, 2006, to present," over defendant's objections that not all employees within the scope of the putative class wear production gear); *Frank v. Gold'n Plump Poultry, Inc.*, Civ. No. 04-1018, 2005 WL 2240336, at *3 (D. Minn. Sept. 14, 2005) ("Plaintiffs' affidavits provide a colorable basis for concluding that Gold'n Plump has a common practice of failing to pay its line

workers for time spent donning, doffing, and sanitizing equipment, and that Gold'n Plump had a similar practice with respect to the sanitation workers before it began contracting out sanitation services. Each representative Plaintiff has averred that he or she is regularly denied pay for the time he or she spends donning, doffing, and/or sanitizing required equipment."). Therefore, the Court adopts plaintiffs' class definition, which would include: all current and former employees at Defendant's St. James plant in the past three years who are/were paid on an hourly basis and who are/were required to wear sanitary clothing or protective gear.

## C.    Scope of the Claims

Armour argues that the certified claims should be limited to pre- and post-shift and meal period donning and doffing time, arguing that plaintiffs' proposed claims for uncompensated pre- and post-shift work are too vague. The Court sees no reason to limit the scope of plaintiffs' claims at this early stage. Plaintiffs have adequately stated allegations that they were not compensated for time they worked beyond time spent donning and doffing, including that Armour's practices of using the lesser of the actual clocked time or the scheduled shift time deprived them of pay for time worked. Armour has provided no support for limiting the scope of the claims for the purposes of conditional certification to claims based on time spent donning and doffing.

## D.    Notice

Plaintiffs seek authorization to send notice to all putative class members and provided a proposed judicial notice and consent form. (Schlesinger Aff., Exs. J-K.)

Armour does not dispute that notice should be sent to the conditional class, but raises several objections to plaintiffs' proposed notice, including substantive aspects of the notice itself and the manner in which the notice is shared.  These matters are well within the Court's discretion, and the Court will rule on each objection below.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The Court **OVERRULES** defendant's objections [Docket No. 45] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated October 18, 2013 [Docket No. 44].   Accordingly, Defendant's motion to dismiss Count IV of Plaintiffs' complaint [Docket No. 14] is **DENIED**.

2.      Plaintiffs' motion to certify a conditional class [Docket No. 30] is **GRANTED** as follows:

   a.      The notice shall be sent to all current and former employees at defendant's St. James facility in the past three years who are or were paid on an hourly basis and who are or were required to wear sanitary clothing or protective gear;

   b.      Plaintiffs' proposed notice is authorized with the following changes:

      i.      in the second bullet point alter the class definition time period to read "during the past **three years plus one week prior to this notice**," and

ii.      include defendant's proposed text outlining defendant's position, with plaintiffs' proposed modifications as laid out in their Reply to defendant's response [Docket No. 42], and

iii.      include defendant's proposed discovery participation warning with plaintiffs' proposed modifications and in the location proposed by plaintiffs as laid out in their Reply to defendant's response [Docket No. 42];

c.      The Court does not authorize plaintiffs to send reminder notices at this time.  After the notices have been sent, the Court would consider authorizing reminder notices if plaintiffs make a showing that such notices are necessary;

d.      The Court authorizes plaintiffs to post the notices at the St. James facility; and

e.      Defendant has **fourteen (14)** days from the issuance of this Order to provide the names and contact information of current and former employees to plaintiffs' counsel.

DATED:  January 8, 2014                    _s/ John H. Tunheim_
Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                         United States District Judge